UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                            **DECISION AND ORDER**
                                                          09-CR-341S

JOHN C. SCOTT,

                        Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant John C. Scott's Motion for Compassionate Release, which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Scott's motion is denied.

## II. BACKGROUND

On February 22, 2010, Scott pleaded guilty to Counts 1 and 2 of the indictment against him, which charged violations of 18 U.S.C. § 2252A (a)(5)(B) (possession of child pornography). (Docket Nos. 12, 13.) These charges stemmed from Scott's admitted possession of two compact discs and other materials containing 29 videos and 555 images of child pornography, some depicting prepubescent children less than 12 years old, and some portraying sadistic, masochistic or violent conduct. (Plea Agreement, Docket No. 12, ¶ 6; Presentence Report, Docket No. 27, ¶¶ 5-10.) These convictions followed Scott's 2006 convictions in state court for 2nd degree sexual abuse, 1st degree attempted sexual abuse, and possession of a sexual performance by a child, the underlying facts of which involved Scott molesting his 10-year-old niece and 11-year-old step-granddaughter. (Presentence Report, ¶¶ 44, 45.)

On October 15, 2010, this Court sentenced Scott to 204 months' imprisonment on

1

each count, to run concurrently, as well as lifetime supervised release on each count, a $200 special assessment, and no fine, fees, or costs. (Docket Nos. 25, 28.) After Scott appealed, the Second Circuit remanded the case for resentencing for this Court to consider two relevant intervening cases. (Docket No. 32.)

Thereafter, on February 6, 2012, this Court re-sentenced Scott to 120 months' imprisonment on each count, with 52 months of the sentence on Count 2 to run concurrently to the sentence imposed on Count 1, and 68 months to run consecutively. (Docket Nos. 40, 41.) Scott thus received an aggregate sentence of 188 months' imprisonment. (Docket No. 40.) This Court also re-imposed lifetime supervised release on each count, a $200 special assessment, and no fine, fees, or costs. (Docket No. 41.) Scott is presently serving his sentence at FCI Butner Low, with a release date of August 5, 2023.[1]

On June 29, 2020, Scott filed a motion for compassionate release to home confinement or for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A)(i) on the ground that he is at heighted risk to develop COVID-19 due to his medical conditions. (Docket Nos. 45, 48, 49.) The government opposes the motion. (Docket No. 46.)

### III. DISCUSSION

**A.    Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)(i)**

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). One such statute is 18 U.S.C. § 3582 (c)(1)(A)(i) which, as amended by the First Step Act

---

[1] See https://www.bop.gov/inmateloc/ (last visited September 17, 2020).

2

of 2018,[2] provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, 432 F. Supp. 3d 421, 426-27 (S.D.N.Y. 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she satisfied the statutory exhaustion requirement, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020). If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce the defendant's sentence under the statute. See 18 U.S.C. § 3582 (c)(1)(A)(i);

---

[2] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 433 F. Supp. 3d 613, 614-15 (S.D.N.Y. 2020) (same).

see also United States v. Gileno, 448 F. Supp. 3d 183, 185 (D. Conn. 2020).

The statutory exhaustion requirement is mandatory and "must be strictly enforced." United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)); United States v. Cassidy, 17-CR-116S, 2020 WL 1969303, at *3-8 (W.D.N.Y. Apr. 24, 2020) (finding exhaustion mandatory). The exhaustion requirement is met when the earlier of two circumstances occurs: (1) the defendant fully exhausts all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, [3] or (2) 30 days lapse from the date the warden of the defendant's facility receives the defendant's request to file such a motion on his or her behalf. See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A)(i). See 28 U.S.C. § 994 (t). The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582

---

[3] The Scparta court explained the administrative process before the Bureau of Prisons as follows:

> First, an inmate must request the warden of her facility to file a compassionate-release motion on her behalf. 28 C.F.R. § 571.61 (a). Second, if the warden denies the prisoner's request, she has 20 days to appeal to the BOP's Regional Director. Id. § 571.63 (a) (providing that denials of compassionate-release requests are governed by the BOP's general Administrative Remedy Program, contained in 28 C.F.R. §§ 542.10-542.19); id. § 542.15 (a) ("An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."). Third, if the Regional Director denies the prisoner's request, she then has 30 days to appeal to the BOP General Counsel. Id. § 542.15 (a). A decision from the General Counsel is the final step in the BOP's Administrative Remedy Program, id., and therefore "constitutes a final administrative decision," id. § 571.63 (b).

United States v. Scparta, 18-cr-578 (AJN), 2020 WL 1910481, at *7 (S.D.N.Y. Apr. 20, 2020).

(c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines. The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons". See U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons" examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other]

5

reasons described."[4]  Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision.  It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559 (c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142 (g); and
>
> (3) the reduction is consistent with this policy statement.

See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction.  See Gileno, 448 F. Supp. 3d at 186.

## B. Scott's Motion for Compassionate Release

### 1. Exhaustion of Administrative Rights

---

[4] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A).  See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited September 17, 2020)). This Court assumes without deciding that this Program Statement is non-binding as it relates to the "Other Reasons" provision of U.S.S.G. § 1B1.13 comment n. 1 (D), and that it is therefore not constrained by what the Director of the Bureau of Prisons might consider other extraordinary and compelling reasons for sentence reduction. See, e.g., United States v. Marks, 03-CR-6033L, 2020 WL 1908911, at *5-7 (W.D.N.Y. Apr. 20, 2020) (finding that post-First Step Act, district courts are no longer bound by the specific categories warranting sentence reduction identified by the Sentencing Commission in U.S.S.G. § 1B1.13, including affording any deference to the Director for purposes of U.S.S.G. § 1B1.13 comment n. 1 (D) ("Other Reasons")).

As indicated above, 18 U.S.C. § 3582 (c)(1)(A) contains a threshold exhaustion requirement.  To satisfy this requirement, a defendant must demonstrate that either (1) he or she fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion to modify an imposed term of imprisonment on his or her behalf, or (2) 30 days have lapsed from the date the warden of the defendant's facility received the defendant's request to file such a motion on his or her behalf.  See 18 U.S.C. § 3582 (c)(1)(A).

For reasons discussed at length in two previous decisions (fully incorporated herein), this Court has found that the statutory-exhaustion requirement is mandatory and cannot be excused.  See Cassidy, 2020 WL 1969303, at *3-8; United States v. Schultz, 17-CR-193S, 2020 WL 1872352, at *3-6 (W.D.N.Y. Apr. 15, 2020); see also United States v. Montanez, 15-CR-122G, 2020 WL 2183093, at *2-11 (W.D.N.Y. May 5, 2020) (finding § 3582 (c)(1)(A)'s exhaustion requirement mandatory).

Here, Scott submitted his request for compassionate release to the warden of FCI Butner Low on April 27, 2020.  (Docket No. 45-1, p. 1.)  The warden denied his request on April 29, 2020.  (Id.)  Thirty days having lapsed since April 27, 2020, this Court finds that Scott has satisfied the statutory exhaustion requirement, and the government does not contend otherwise.  (See Docket No. 46, p. 3 n. 1 (conceding exhaustion).)

**2. Extraordinary and Compelling Reasons for Sentence Reduction**

Scott is a 64-year-old man who claims to have underlying medical conditions that make him highly susceptible to COVID-19, including cervical spondylosis with radiculopathy, degenerative disc disease, advanced liver disease, chronic obstructive pulmonary disease ("COPD"), hepatitis C, and chronic thrombocytopenia (low platelet

7

levels). (Docket No. 45-1, pp. 5-11.)  These conditions are confirmed by medical records. (Id.)  In addition, the presentence report confirms spinal issues, chronic hepatitis C, and a history of pulmonary disease.[5]  (Presentence Report, ¶¶ 71, 72.)  If granted compassionate release, Scott plans to live with his sister in Silver Creek, New York. (Docket No. 45, p. 10.)

Having thoroughly reviewed the record, this Court finds that none of Scott's medical conditions constitute an extraordinary and compelling reason for a sentence reduction under the medical-condition section of U.S.S.G. § 1B1.13.  None of the conditions are a terminal illness (i.e., a serious and advanced illness with an end of life trajectory), see U.S.S.G. § 1B1.13 comment n. 1 (A)(i); nor are any a serious condition, impairment, or age-related deterioration that substantially diminishes Scott's ability to provide self-care, see U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). See United States v. Korn, 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *3-6 (W.D.N.Y. Apr. 9, 2020).

As for the "Other Reasons" section of U.S.S.G. § 1B1.13 comment n. 1 (D), which provides for relief if there exist extraordinary and compelling reasons for sentence reduction other than (or in combination with) what is specifically prescribed, Scott maintains that his medical conditions put him at high risk for serious illness from COVID-19.  He is correct.

COVID-19 is the sweeping, potentially deadly, worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020. The Centers for Disease Control and Prevention ("CDC") has determined that individuals

---

[5] The presentence report also indicates that Scott has diabetes. (Presentence Report, ¶ 72.)  This appears to be an error, since Scott's more recent medical records indicate that he denies any history of diabetes. (Docket No. 45-1, p. 8.)

with certain underlying medical conditions, particularly if not well controlled, are at high risk for severe illness from COVID-19.[6] See Jones v. Wolf, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (taking judicial notice that "for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality") (quoting Basank v. Decker, 449 F. Supp. 3d 205, 211 (S.D.N.Y. 2020)).  Those medical conditions consist of cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state, obesity (body mass index of 30 or higher), serious heart conditions, sickle cell disease, and Type 2 diabetes melitus.[7]  The CDC has also identified medical conditions that *might* make an individual at increased risk for severe illness from COVID-19, including liver disease and pulmonary fibrosis (damaged or scarred lung tissue).[8]  Scott's COPD and history of pulmonary disease, along with his advanced liver disease, thus place him in the high-risk category.

Some courts have found that inclusion in the high-risk category alone is enough to warrant a sentence reduction, see, e.g., United States v. Zukerman, 16 Cr. 194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases), but this Court has not.  Rather, it has found, and continues to find, that the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an

---

[6] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 17, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 17, 2020).

[8] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited September 17, 2020).

extraordinary or compelling reason for a sentence reduction under the statutory scheme. See United States v. Stevens, 04-CR-222S, 2020 WL 2393306, at *6 (W.D.N.Y. May 12, 2020); Korn, 2020 WL 1808213, at *6; see also United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree"); United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) ("[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13"); United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); Gileno, 448 F. Supp. 3d at 188 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno.").

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began

in early 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19.[9]  This plan is based on guidance and directives from the World Health Organization, the CDC, and other related agencies. Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours.[10]  These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population.  And although FCI Butner Low initially had numerous cases,[11] these measures are now proving effective: there is presently only 1 inmate case and 1 staff case.[12]

Thus, although Scott has demonstrated that he falls into the high-risk group, he nonetheless alleges nothing more than the general possibility that he could contract COVID-19, and he has made no showing that FCI Butner Low's plan and efforts to combat the disease are inadequate or that the facility is unable to adequately treat him if he falls ill.  To the contrary, it appears that the BOP's efforts are now working.  Thus, this Court finds that Scott fails to demonstrate an extraordinary and compelling reason for a sentence reduction based on COVID-19.  See United States v. Koehn, 10-CR-264S, 2020

---

[9] See https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited September 17, 2020).

[10] See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 17, 2020).

[11] This Court recognizes that the coronavirus initially hit FCI Butner Low very hard.  Sixteen inmates and one staff member have succumbed to COVID-19.  In addition, 637 inmates and 17 staff members have contracted and recovered from the disease.  See https://www.bop.gov/coronavirus/covid19_status.jsp (last visited September 17, 2020).  At present, however, there are only two positive cases.  Id.

[12] See https://www.bop.gov/coronavirus/ (last visited September 17, 2020).

WL 4361675, at *7 (W.D.N.Y. July 30, 2020) (finding no extraordinary or compelling reasons for compassionate release for high-risk defendant in facility with positive cases); Stevens, 2020 WL 2393306, at *6-7 (denying compassionate release to defendant in facility with no reported cases alleging only the general possibility of contracting COVID-19); Korn, 2020 WL 1808213, at *6-8 (denying compassionate release to defendant who failed to show inadequacy in Bureau of Prisons plan or ability to treat him); see also Gileno, 2020 WL 1307108, at *4; Eberhart, 2020 WL 1450745, at *2; Zywotko, 2020 WL 1492900, at *2; Gagne, 2020 WL 1640152, at *4.

### 3. Consideration of the § 3553 (a) Factors

Even if Scott had demonstrated extraordinary and compelling reasons for a sentence reduction (which he has not), this Court would find that those reasons are outweighed by consideration of the § 3553 (a) factors and that Scott's original sentence would be severely undermined by a sentence reduction. See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors); see also Ebbers, 2020 WL 91399, at *7.   The § 3553 (a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See 18 U.S.C. § 3553 (a).

Scott's conduct is egregious. After having molested both his niece and step-granddaughter, it was discovered that Scott possessed 29 videos and 555 images of child pornography, some depicting prepubescent children less than 12 years old, and some

portraying sadistic, masochistic or violent conduct. He secreted this stash of child pornography in a locked shed behind his home and initially denied ownership when it was discovered by subsequent owners of the property.

For this aggravated criminal activity, this Court imposed a 188-month aggregate sentence. This is a fair, just, and reasonable sentence which, in this Court's view, would be severely undermined by a reduction to time served. Such a reduced sentence would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by the defendant. See 18 U.S.C. § 3553 (a). Such a reduction would also result in unwarranted sentencing disparities. Id. Accordingly, consideration of the § 3553 (a) factors outweighs any extraordinary and compelling reasons for a sentence reduction.

### 4. Consistency of a Reduction with U.S.S.G. § 1B1.13

Finally, even if Scott had demonstrated extraordinary and compelling reasons for a sentence reduction that are not outweighed by consideration of the § 3553 (a) factors (which he has not), this Court would find that a sentence reduction is not consistent with U.S.S.G. § 1B1.13. See 18 U.S.C. § 3582 (c)(1)(A) (requiring that any sentence reduction be consistent with applicable policy statements issued by the Sentencing Commission); U.S.S.G. § 1B1.13 (2). This inquiry requires a determination as to whether the defendant poses a danger to the safety of any person or to the community if released.

Scott has a history of predatory behavior. He pleaded guilty to molesting his 10-year-old niece and then years later molesting his 11-year-old step-granddaughter. (Presentence Report, ¶¶ 44, 45.) He coerced and manipulated both victims in an attempt to normalize his behavior and have them accept his physical assaults. (Id.) Years later,

Scott's cache of child pornography was discovered.

Given the manipulative and predatory nature of Scott's criminal conduct, its longevity, and Scott's history of sexual misconduct with minors, this Court finds that Scott remains a danger to the community if released. A sentence reduction is therefore precluded on this basis as well. See Koehn, 2020 WL 4361675, at *8 (finding defendant with history of predatory behavior, including molesting minors, to pose a danger to the community); United States v. Malecki, 17-CR-18S, 2020 WL 4013050, at *7 (W.D.N.Y. July 16, 2020) (finding child pornography defendant who "went to great lengths to cloak is illegal conduct" to be a danger to the community); United States v. Roney, 10-CR-130S, 2020 WL 2846946, at *7-8 (W.D.N.Y. June 2, 2020) (denying compassionate release to child pornography defendant due, in part, to the defendant's history of sexually abusing minors); United States v. Schultz, 17-CR-193S, 2020 WL 2764193, at *8 (W.D.N.Y. May 28, 2020) (denying compassionate release to child pornography defendant due, in part, to "the manipulative and predatory nature of [his] criminal conduct and his history of sexual misconduct"); United States v. Lebrecht, 1:16-CR-166 EAW, 2020 WL 2519721, at *3 (W.D.N.Y. May 18, 2020) (denying compassionate release to child pornography defendant due, in part, to the danger the defendant poses to the community as demonstrated by his on-line chats and other underlying offense conduct).

## IV. CONCLUSION

For all of the reasons stated above, this Court finds that compassionate release under 18 U.S.C. § 3582 (c)(1)(A)(i) is not warranted. Scott's motion will therefore be denied.

## V. ORDER

IT HEREBY IS ORDERED, that Scott's Motion for Compassionate Release (Docket No. 45) is DENIED.

SO ORDERED.

Dated:     September 18, 2020
           Buffalo, New York

                                              s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge